**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA**

| | | |
|---|---|---|
| TREVA HEARNE, | ) | 3:08-CV-0500-ECR-RAM |
|     Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| COUNTRYWIDE HOME LOANS, INC., SOMA FINANCIAL, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, and GSAA EQUITY TRUST 2006-16 and MORTGAGE ELECTRONIC REGISTRATION SERVICE, | ) | |
|     Defendants. | ) | |

    Plaintiff is a homeowner in danger of losing her home to foreclosure. Defendants are Countrywide Home Loans, Inc. ("Countrywide"), Deutsche Bank National Trust Company, GSAA Equity Trust 2006-16 and Mortgage Electronic Registration Service ("MERS"). Plaintiff asserts seven claims for relief: (1) wrongful foreclosure; (2) fraud in the inducement; (3) conspiracy to commit fraud by creation, operation and use of the MERS system; (4) conspiracy to commit wrongful foreclosure by creation, operation and use of the MERS system; (5) unjust enrichment; (6) injunctive relief and; (7) declaratory relief. Before the court are Defendants' motion to dismiss (#111) and motion for judicial notice (#112). The motions (## 111 and 112) are ripe, and we now rule on them.

**I. Factual and Procedural History**

The allegations set forth in Plaintiff's second amended complaint are as follows: Plaintiff purchased two homes — located at 12291 and 12293 Green Mountain Road in Reno, Nevada[1] — on July 12, 2006, using borrowed funds. (Second Am. Compl. ¶ 33 (#109).) "Plaintiff made payments according to the closing papers and the prepayment coupon book sent by Soma to Soma Financial." (Id. ¶ 39.) "In December 2006 Plaintiff was informed by Soma that Countrywide had been assigned the right to servicing the mortgage, no communication was received from Countrywide other than the coupons sent sometime in December." (Id. ¶ 40.) "Beginning on or about March 2007, Countrywide stated Plaintiff was not making a payment large enough to cover escrow," though "Plaintiff had made the payments according to the payment amount agreed upon in the closing papers each and every month." (Id. ¶ 44.) On October 8, 2007, Plaintiff informed Countrywide that "the astronomical increase in payments, sometimes nearly double the agreed to payment with Soma was beyond the agreement with Soma." (Id. ¶ 48.) Plaintiff received no response. (Id.) In May 2008, Plaintiff and Countrywide renegotiated Plaintiff's mortgage on one of her Reno properties —

---

[1] Plaintiff's complaint also references a home she owns in St. Petersburg, Florida. Plaintiff, however, apparently does not continue to assert any claims relating to the Florida property: "Plaintiff retained counsel in Florida to stop the foreclosure. The matter was withdrawn by the Defendants. Nothing is currently pending in Florida. This case is where the entire action is being litigated. This has been the circumstance since the beginning of this action. This is a matter on contracts entered into in the State of Nevada." (P.'s Opp. at 23 (#117).)

2

1  located at 12293 Green Mountain Street — and agreed to a monthly
2  payment of $548.64 upon a one time payment of $2,990.00.
3  (Id. ¶ 51.)  A telephone contact from Countrywide told Plaintiff
4  that the mortgage on her other Reno property — at 12291 Green
5  Mountain Street — would also be renegotiated.  (Id. ¶ 53.)
6  Plaintiff sent three letters requesting that renegotiation.  (Id.)
7  On August 13, 2008, Recontrust, claiming to be the trustee of the
8  property, sent a notice of default with respect to Plaintiff's 12291
9  Green Mountain Street property.  (Id. ¶ 54.)  On August 1, 2008,
10 Countrywide sent Plaintiff a notice of delinquency "on purported
11 payments required on the 12293 Green Mountain property in excess of
12 $1,500.00 per month, which was not the renegotiated modification and
13 again threatened to default and accelerate the note."  (Id. ¶ 58.)
14 Countrywide refused to accept payments on Plaintiff's 12293 Green
15 Mountain Road property after November 2008.  (Id. ¶ 62.)  On
16 "January 12, 2009, Plaintiff received a notice sent to the wrong
17 address of her office and forwarded that stated her payment due on
18 January 1, 2009 was $10,206.28."  (Id.)  Plaintiff's home at 12293
19 Green Mountain Road has been scheduled for a Trustee's sale.  (Id. ¶
20 139.)

## II. Motion to Dismiss Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to

3

1  support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555,
2  561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889
3  (1990)) (alteration in original).  Moreover, "[a]ll allegations of
4  material fact in the complaint are taken as true and construed in
5  the light most favorable to the non-moving party." In re Stac
6  Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation
7  omitted).

8        Although courts generally assume the facts alleged are true,
9  courts do not "assume the truth of legal conclusions merely because
10 they are cast in the form of factual allegations." W. Mining
11 Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Accordingly,
12 "[c]onclusory allegations and unwarranted inferences are
13 insufficient to defeat a motion to dismiss." In re Stac Elecs., 89
14 F.3d at 1403 (citation omitted).

15       Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is
16 normally limited to the complaint itself.  See Lee v. City of L.A.,
17 250 F.3d 668, 688 (9th Cir. 2001).  If the district court relies on
18 materials outside the pleadings in making its ruling, it must treat
19 the motion to dismiss as one for summary judgment and give the non-
20 moving party an opportunity to respond.  Fed. R. Civ. P. 12(d);
21 see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  "A
22 court may, however, consider certain materials — documents attached
23 to the complaint, documents incorporated by reference in the
24 complaint, or matters of judicial notice — without converting the
25 motion to dismiss into a motion for summary judgment." Ritchie, 342
26 F.3d at 908.

4

1      If documents are physically attached to the complaint, then a
2 court may consider them if their "authenticity is not contested" and
3 "the plaintiff's complaint necessarily relies on them."  Lee, 250
4 F.3d at 688 (citation, internal quotations, and ellipsis omitted).
5 A court may also treat certain documents as incorporated by
6 reference into the plaintiff's complaint if the complaint "refers
7 extensively to the document or the document forms the basis of the
8 plaintiff's claim."  Ritchie, 342 F.3d at 908.  Finally, if
9 adjudicative facts or matters of public record meet the requirements
10 of Fed. R. Evid. 201, a court may judicially notice them in deciding
11 a motion to dismiss.  Id. at 909; see Fed. R. Evid. 201(b) ("A
12 judicially noticed fact must be one not subject to reasonable
13 dispute in that it is either (1) generally known within the
14 territorial jurisdiction of the trial court or (2) capable of
15 accurate and ready determination by resort to sources whose accuracy
16 cannot reasonably be questioned.").

## III. Analysis

A. Transferred and Remanded Claims

20     Pursuant to a conditional transfer order issued by the United
21 States Judicial Panel on Multidistrict Litigation ("MDL"), the
22 claims in this case that are related to the formation and/or
23 operation of the MERS system were transferred to the District of
24 Arizona and assigned to the Honorable James A. Teilborg for
25 coordinated or consolidated pretrial proceedings.  (In Re: Mortgage
26 Electronic Registration Systems (MERS) Litigation, MDL No. 2119,
27 Conditional Transfer Order (#125).)  Claims unrelated to the

5

formation and/or operation of MERS were simultaneously remanded to us. (Id.)[2]  Thus, we will not rule on the pending motion to dismiss with regard to Plaintiff's claims insofar as they are related to the formation and/or operation of the MERS system.

### B. Wrongful Foreclosure

The first claim for relief in Plaintiff's complaint is wrongful foreclosure.  This claim is under the jurisdiction of the District of Arizona. (In Re: Mortgage Electronic Registration Systems (MERS) Litigation, MDL No. 2119, Order at 7 (# 132).) Thus, we will not rule on it.

### C. Fraud in the Inducement

Plaintiff's second claim for relief alleges fraud in the inducement.  This claim has been bifurcated, with certain allegations transferred to the District of Arizona and certain allegations remanded to our jurisdiction. (Id. at 4.)  Plaintiff's allegations that: (1) Defendants failed to notify Plaintiff that their obligations on the notes had been discharged; (2) had no lawful right to foreclose on Plaintiff's properties; and (3) knew that Defendants were not holders in due course, are under the jurisdiction of the District of Arizona. (Id.)  "These allegations are based on alleged deficiencies in the notes related by the operation of MERS." (Id.)  We will therefore not rule on those particular allegations.

---

[2] In an Order filed on March 22, 2010, Judge Teilborg of the District of Arizona clarified which of Plaintiff's claims are related to the formation and/or operation of MERS. (In Re: Mortgage Electronic Registration Systems (MERS) Litigation, MDL No. 2119, Order (# 132).)

1    The allegations under this claim that have been remanded and
2 are under our jurisdiction are as follows: (1) Defendants
3 "misrepresented the ability of Plaintiff to qualify for the loans";
4 (2) Defendants "concealed the true terms of the loans and the risk
5 of the transactions"; (3) "Countrywide failed and refused to further
6 advise Plaintiff of the terms of the negotiated modification of the
7 loan on 12293 Green Mountain and the effect of that modification on
8 the equity in her home." (Id. ¶¶ 80, 79 and 59.)
9    Under Nevada law, a claim for fraud in the inducement requires
10 a party to prove each of the following elements: (1) a false
11 representation; (2) knowledge or belief that the representation was
12 false (or knowledge that the defendant had an insufficient basis for
13 making the representation); (3) intent to induce the plaintiff to
14 consent to the contract's formation; (4) justifiable reliance upon
15 the misrepresentation; and (5) damage resulting from such reliance.
16 J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc., 89 P.3d 1009,
17 1017 (Nev. 2004). A claim for fraudulent concealment requires that
18 the "defendant must have been under a duty to disclose the fact to
19 the plaintiff." Nev. Power Co. v. Monsanto Co., 891 F. Supp. 1406,
20 1415 (D. Nev. 1995).
21    Plaintiff's claim that Defendants misstated her ability to
22 qualify for her loans fails to satisfy the particularity
23 requirements of Rule 9(b). Federal Rule of Civil Procedure 9(b)
24 requires that a complaint "must state with particularity the
25 circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).
26 In a case with multiple defendants, "Rule 9(b) does not allow a
27 complaint to merely lump multiple defendants together but requires
28

7

1 plaintiffs to differentiate their allegations when suing more than
2 one defendant and inform each defendant separately of the
3 allegations surrounding his alleged participation in the fraud."
4 Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal
5 quotation marks and citation omitted).  Plaintiff does not identify
6 which Defendant or Defendants misstated her ability to qualify for
7 her loans nor does she allege facts relating to how Defendants
8 misstated her ability to qualify for her loans.
9      The only fact alleged in the complaint that could plausibly
10 support this claim is as follows: "Plaintiff was not required to
11 fill out any applications regarding income, expenses of any other
12 information in order to qualify for the loan.  The income statement
13 was completed by Soma and not signed by Plaintiff and not seen by
14 Plaintiff until documents were mailed to her well after closing . .
15 . The documents misstated Plaintiff's income and misstated that she
16 received rent for the Florida home, which she did not, or, if any,
17 sporadically."  (Second Am. Compl. ¶ 32 (#109).)  Even assuming that
18 Plaintiff's income was misstated on certain documents, Plaintiff
19 claims she received the alleged false statement after closing.  The
20 timing of Plaintiff's receipt of the alleged false statement
21 essentially forecloses the possibility that Soma made the statement
22 with the intent to induce Plaintiff's consent "to the contract's
23 formation" and certainly forecloses the possibility that Plaintiff
24 justifiably relied "upon the misrepresentation" in entering into the
25 loan contract.  See J.A. Jones Const. Co., 89 P.3d at 1017.
26      Plaintiff's allegation that Defendants "concealed the true
27 terms of the loans and the risk of the transactions," (Second Am.
28

8

Compl. ¶ 79 (#109)), likewise fails under Rule 9(b); it is both vague and conclusory.

Plaintiff's claim against Countrywide also does not survive the present motion to dismiss. Plaintiff claims that on June 1, 2008, Plaintiff and Countrywide modified the loan on her Reno home at 12293 Green Mountain Road to a fixed rate loan with a monthly payment of $549.64 per month, upon a one-time payment of $2,900. (Id. ¶ 51.) "On August 1, 2008, Defendant Countrywide sent notice of delinquency to Plaintiff on purported payments required on the 12293 Green Mountain property in excess of $1,500.00 per month which was not the renegotiated modification and again threatened to default and accelerate the note." (Id. ¶ 58.) "Countrywide accepted payments until November 2008 . . . and then refused to accept the payments. On January 12, 2009, Plaintiff received a notice sent to the wrong address of her office and forwarded that stated her payment, due on January 1, 2009, was $10,206.28." (Id. ¶ 62.) Thus, Plaintiff alleges that she was billed, perhaps several times, for amounts inconsistent with her modification agreement. This allegation does not, however, suffice to support a claim that Plaintiff was induced to enter into her modification agreement by a false statement. Plaintiff's second claim for relief will therefore be dismissed.

D. Conspiracy to Commit Fraud and Foreclosure by the Creation, Operation and Use of the MERS System

Plaintiffs' third and fourth claims for relief allege a conspiracy to commit fraud and foreclosure, respectively, by the creation, operation and use of the MERS system. These claims are

9

under the jurisdiction of the District of Arizona. (In Re: Mortgage Electronic Registration Systems (MERS) Litigation, MDL No. 2119, Order at 7 (# 132).) Thus, we will not rule on them.

### E. Unjust Enrichment

Plaintiff's fifth claim for relief alleges unjust enrichment against all Defendants. This claim has been bifurcated: allegations based "on theories related to MERS" were transferred to the District of Arizona and allegations based on "loan origination issues" were remanded to our jurisdiction. (Id. at 6.) Under Nevada law, unjust enrichment occurs when "a person has and retains a benefit which in equity and good conscience belongs to another." Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975, 942 P.2d 182, 187 (Nev. 1997). An action "based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." Id. The doctrine of unjust enrichment thus only "applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." Id. (quoting 66 Am. Jur. 2d Restitution § 11 (1973)).

The basic premise of Plaintiff's claim for unjust enrichment is that Plaintiff's mortgages carried inflated interest rates to which she would not have agreed had she understood the true terms of the loans. (Second Am. Compl. ¶ 131 (#109).) Plaintiff's mortgages are

10

express and written contracts; Plaintiffs' fifth claim thus fails and will be dismissed.

### F. Injunctive and Declaratory Relief

Plaintiff's sixth and seventh claims are for injunctive and declaratory relief, respectively.  Injunctive and declaratory relief are not independent causes of action; they are prayers for relief. Therefore, Plaintiff's prayers for injunctive and declaratory relief will be denied as to the claims dismissed by this Order.

## IV. Leave to Amend

Under Rule 15(a) leave to amend is to be "freely given when justice so requires."  FED. R. CIV. P. 15(a).  In general, amendment should be allowed with "extreme liberality."  Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quoting Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990)).  If factors such as undue delay, bad faith, dilatory motive, undue prejudice or futility of amendment are present, leave to amend may properly be denied in the district court's discretion. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003)(discussing Foman v. Davis, 371 U.S. 178, 182 (1962).

It is not within our authority to rule on Plaintiff's motion for leave to amend with respect to claims related to the formation and/or operation of the MERS system.  Plaintiffs must seek leave from Judge Teilborg to amend those claims.

With respect to the claims before us, Plaintiff has been put on notice as to the her claims' deficiencies.  Indeed, Plaintiff has

11

already amended her original complaint twice.  Her second amended complaint fails to state a single claim entitling her to relief.  We therefore conclude that granting Plaintiff further leave to amend her complaint would be futile.

## **V. Conclusion**

    Plaintiff's first, third and fourth claims for relief alleging wrongful foreclosure, conspiracy to commit fraud and conspiracy to commit wrongful foreclosure are under the jurisdiction of the District of Arizona, and are therefore not addressed in this Order. Plaintiff's second claim for relief fails: two of the allegations lack the specificity required under Rule 9(b) and the third does not allege facts that constitute fraudulent inducement.  Plaintiff's fifth claim for relief, alleging unjust enrichment, fails because that theory of relief is not available when there is an express, written contract, as in this case.  Plaintiff sixth and seventh claims for relief, for injunctive and declaratory relief, respectively, are not independent causes of action.  We will deny Plaintiff leave to amend her complaint because granting further leave to amend would be futile.

    **IT IS, THEREFORE, HEREBY ORDERED THAT** Defendants' Motion to Dismiss (# 111) is **GRANTED** on the following basis: We lack jurisdiction over, and thus do not rule upon, Plaintiff's claims that were transferred to the District of Arizona.  Plaintiff's first, third and fourth claims for relief and parts of Plaintiff's

12

second and fifth claims for relief have been transferred to the District of Arizona.  Parts of Plaintiff's second and fifth claims are under our jurisdiction.  Defendants' motion is granted with respect to those claims that are under our jurisdiction.

**IT IS HEREBY FURTHER ORDERED THAT** Defendants' motion for judicial notice (#112) is **DENIED** as moot.

DATED: April 30, 2010.

_____
UNITED STATES DISTRICT JUDGE

13